1  Matthew J. Faust, State Bar No. 254145
       *faust@shariffaust.com*
2  Khodadad D. Sharif, State Bar No.  187992
       *sharif@shariffaust.com*
3  SHARIF | FAUST LAWYERS, LTD.
4  600 B Street, Suite 2490
5  San Diego, CA  92101
   Telephone:  (619) 233-6600
6  Facsimile:  (619) 233-6602

7

8  Attorneys for Elissa D. Miller
   Chapter 7 Bankruptcy Trustee

9

10        UNITED STATES BANKRUPTCY COURT
        CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| 11 | In re | ) | Bankruptcy Case No.: 2:19-20867-ER |
|----|-------|---|-----|
| 12 | South Bay Investment Group, Inc., | ) | Adversary Proceeding No.: |
| 13 | Debtor. | ) | **TRUSTEE'S COMPLAINT FOR:** |
| 14 | | ) | |

15  ELISSA D. MILLER, Chapter 7
16  Trustee for the Estate of South Bay
    Investment Group, Inc.;
17
18                      Plaintiff,
        vs.
19
20  CHRISTOPHER E. LYELL, an
    individual, aka CHRIS LYELL;
21  BRADLEY K. HANSEN, an
    individual, aka BRAD HANSEN;
22  MANHATTAN BEACH VENTURES,
23  LLC, a California limited liability
    company, dba The Student Loan Relief
24  Department;
    PRIME ENTERPRISES, LLC, and
25  Idaho limited liability company doing
26  business in California; and
    PAUL JOHNSON, an individual
27
28                      Defendants.

**(1) AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS;**
**(2) RECOVERY OF CORPORATE DISTRIBUTIONS;**
**(3) FOR AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS;**
**(4) FOR AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS;**
**(5) CONVERSION AND CONSPIRACY TO CONVERT ASSETS;**
**(6) DECLARATORY JUDGMENT: SUCCESSOR LIABILITY;**
**(7) DECLARATORY JUDGMENT: ALTER EGO;**
**(8) RECOVERY OF AVOIDED TRANSFERS OR THEIR VALUE; AND**
**(9) PRESERVATION OF TRANSFERS AVOIDED**

**COMES NOW**, Elissa D Miller, in her capacity as Chapter 7 Trustee (the "Trustee") for the estate of South Bay Investment Group, Inc. ("SBIG" or "Debtor"), who brings this avoidance action against CHRISTOPHER E. LYELL, an individual, aka CHRIS LYELL; BRADLEY K. HANSEN, an individual, aka BRAD HANSEN; MANHATTAN BEACH VENTURES, LLC, a California limited liability company, dba The Student Loan Relief Department; and DOES 1 through 25 (collectively "Defendants") and allege as follows:

## INTRODUCTION

1)      This complaint is filed against Defendants to avoid transactions made by the Debtor to the Defendants, who are insiders and successors of the Debtor, leaving Debtor unable to pay its debts.

## JURISDICTION & VENUE

2)      This Bankruptcy Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and Rule 7001 of the Federal Rules of Bankruptcy Procedure.

3)      This complaint is filed in conjunction with an underlying bankruptcy case, *In re South Bay Investment Group, Inc.*, Debtor,  CACB Case No. 2:19-bk-20867-ER, commenced on 12 September 2019 (the "Commencement Date") in the United States Bankruptcy Court for the Central District of California, Los Angeles Division.

4)      This Court has jurisdiction over this adversary proceeding, which is a core proceeding, pursuant to 28 U.S.C. §§ 157(b)(2)(A) and (O), 1334.  (F.R.C.P. § 8).

Regardless of whether this proceeding is core, non-core, or otherwise, Plaintiff consents to the entry of a final order and judgment by the Bankruptcy Court.  Defendant is hereby notified that Rule 7008 of the Federal Rules of Bankruptcy Procedure requires defendant to plead whether consent is given to the entry of a final order and judgment by the Bankruptcy Court.

5)    The Court has personal jurisdiction over Defendants because the complained-of acts all occurred and were committed by Defendants in this Judicial District.

6)    Venue is proper in this Court because this civil proceeding arises under Title 11 of the United States Bankruptcy Code as provided in 28 U.S.C. § 1409

## THE PARTIES

7)    Plaintiff is the chapter 7 trustee for the SBIG bankruptcy estate (the "Estate") and its respective creditors.  Plaintiff brings this action solely in her capacity as chapter 7 trustee for the Estate and its creditors.  To the extent that Plaintiff hereby asserts claims under 11 U.S.C. § 544(b), Plaintiff is informed and believes, and on that basis alleges thereon, that there exists in this Bankruptcy Case one or more creditors holding unsecured claims allowable under 11 U.S.C. § 502 or that are not allowable only under 11 U.S.C. § 502(e) who could have avoided the respective transfers or obligations under California or other applicable law before the Petition Date.

8)    As alleged Plaintiff is the chapter 7 trustee.  As a result, Plaintiff does not have personal knowledge of the facts alleged in this Complaint that occurred prior to her

appointment and, therefore, alleges all those facts on information and belief.   Plaintiff

reserves the right to amend this Complaint to allege additional claims against Defendants

(defined below) and to challenge and recover transfers made to or for the benefit of

Defendants in addition to those transfers alleged in this Complaint.

9)   Defendant CHRISTOPHER E. LYELL, aka CHRIS LYELL (hereinafter "Mr.

Lyell") is an individual residing within this judicial district.  Mr. Lyell, at all times relevant

to this Complaint, was an insider of Debtor; specifically, a shareholder, officer, and director.

 Mr. Lyell was also an insider of Defendant Manhattan Beach Ventures, LLC; specifically, a

member, a manager, and/or the managing member.  Mr. Lyell maintained signatory powers

for both Debtor and Defendant M.B.V.'s depository bank accounts. Mr. Lyell participated in

the day-to-day business activities of Debtor and Defendant M.B.V., and, at all times material

to this Complaint, acting alone or in concert with others, in formulating, directing,

controlling, had the authority to control and participated in the acts and practices of Debtor

and Defendant M.B.V., including the acts and practices set forth in this Complaint. Mr. Lyell

received moneys from the Debtor in the form of dividends/distributions from Debtor.  Upon

information and belief, Mr. Lyell also received moneys from Debtor in the form of

dividends/distribution from M.B.V. that originated and/or were received in this judicial

district.

10)   Defendant BRADLEY K. HANSEN, aka BRAD HANSEN, (hereinafter "Mr.

Hansen") is an individual residing within this judicial district.  Mr. Hansen, at all times

relevant to this Complaint, was an insider of Debtor; specifically, a shareholder, officer, and

director.  Mr. Hansen was also an insider of Defendant M.B.V. specifically, a member, a manager, and/or the managing member.  Mr. Hansen maintained signatory powers for both Debtor and Defendant M.B.V.'s depository bank accounts. Mr. Hansen participated in the day-to-day business activities of Debtor and Defendant M.B.V., and, at all times material to this Complaint, acting alone or in concert with others, in formulating, directing, controlling, had the authority to control and participated in the acts and practices of Debtor and Defendant M.B.V., including the acts and practices set forth in this Complaint.  Mr. Hansen received moneys from the Debtor in the form of dividends/distributions from Debtor.  Upon information and belief, Mr. Hansen also received moneys from Debtor in the form of dividends/distribution from M.B.V. that originated and/or were received in this judicial district.

11)    Defendant MANHATTAN BEACH VENTURES, LLC, dba The Student Loan Relief Department ("M.B.V.") is a limited liability company formed under the laws of California, with its principal place of business at 2627 Manhattan Beach Blvd., Ste 200, Redondo Beach, CA 90278.  At the filing of this Complaint, M.B.V. is a suspended business entity.

12)    Defendant PRIME ENTERPRISES, LLC ("Prime"), is a limited liability company formed under the laws of Idaho, which does business in this judicial district.  At all times relevant to this Complaint, Prime is/was a managing member of Defendant M.B.V. Upon information and belief, Defendant Prime received moneys from the Debtor in the form

of dividends/distributions from M.B.V. that originated and/or were received in this judicial district.

13)     Defendant PAUL JOHNSON ("Mr. Johnson") is an individual residing in Idaho, but who does business within this judicial district.  At all times relevant to this Complaint, Mr. Johnson is/was a member, manager, and/or managing member of Defendant Prime.  Upon information and belief, Defendant Johnson received moneys from the Debtor in the form of dividends/distributions from Defendants M.B.V. and/or Prime that originated and/or were received in this judicial district.

14)     At all times mentioned in the causes of action into which this paragraph is incorporated by reference, each Defendant was the agent/employee of each and every other Defendant. In doing the things alleged in the causes of action to which this paragraph is incorporated by reference, each and every Defendant was acting within the course and scope of this agency and employment and was acting with the consent, permission, and authorization of each of the other Defendants. All actions of each Defendant alleged in the causes of action into which this paragraph is incorporated by reference were ratified and approved by the officers or managing agents of every other Defendants.

## FACTS COMMON TO ALL CAUSES OF ACTION

### I.    Debtor's Business

15)     In or about 2014, Defendants Lyell and Hansen formed and began operating Debtor to work in the student loan consolidation industry as a marketing team selling loan

consolidation packages.  Debtor initially did business under the name "Student Loan Project," but later did business under the name "Student Loan Relief Department."

16)     Debtor would obtain "leads"—individuals who were paying student loans and required assistance—and, through the efforts of a call center-based sales force, assisted student loan borrowers to assist them in qualifying for federal student loan repayment programs.  At all relevant times, Debtor maintained its principal place of business at 2627 Manhattan Beach Blvd., Ste 200, Redondo Beach, CA 90278.

17)     Once Debtor's salespeople were able to close a lead, they forwarded the student to one of a handful of student loan processors ("Processors"), who would finalize the students' paperwork with the federal government.  Thereafter, the students made their payments to the Processors.

18)     Upon receiving the students' payments, the Processors then paid a portion of the fees collected to Debtor.

19)     Debtor thereafter paid a portion of the fees it received from the Processors to its lead generators, including a creditor in this action, R2 MPowered, LLC (hereinafter "R2").

## II.     Debtor Colluded with the Defendants to Defraud Debtor's Creditors

20)     In or about late 2015, Defendants Lyell and Hansen decided to solicit an "investor," who turned out to be Defendant Paul Johnson.

21)     Upon information and belief, these gentlemen determined that they could make their business more profitable if they did not pay their largest creditor, which was, at the time

R2.  Accordingly, they agreed to form Defendant M.B.V. to act as a new corporate shell to house Debtor's assets.

22)    Upon information and belief, they agreed amongst themselves to engage in a sham sale of Debtor's assets, described below, to Defendant M.B.V. in an effort to make their transaction appear legitimate.  The assets that were supposedly transferred to M.B.V. constituted everything that made up Debtor's business, including but not limited to:

(a) contracts,

(b) equipment,

(c) files,

(d) furniture,

(e) computers,

(f) software,

(g) trade secrets,

(h) customer lists,

(i) vendor information,

(j) employees,

(k) good will (including the dba "Student Loan Relief Department"), and

(l) R2's leads (collectively, the "S.B.I.G. Assets").

23)    The only asset not directly transferred to Defendant M.B.V., was a small receivable which totaled about $ 7,500 in payments per month from one of the Processors.

24)     Upon information and belief, this sham sale occurred in early 2016; however, Defendants concealed the fact of their transfer from their creditors.

25)     With the "sale" complete, Defendants Lyell and Hansen then drained Debtor's bank account, paying themselves "dividends."

26)     With its capital account drained, Debtor claimed it was now unable to pay its creditors.

## III.    The Defendants Prosper From Debtor's Assets

27)     Defendant M.B.V. was formed, owned, and operated by Defendants Lyell, Hansen, and Johnson (either directly or through Defendant Prime, which is also a manager and/or member of Defendant M.B.V.).

28)     With Debtor's creditors out of the way, Defendants picked up Debtor's business operations through Defendant M.B.V.  M.B.V. became a profitable business venture once it no longer had to worry about paying S.B.I.G.'s debts.

29)     Utilizing the money that should have been paid to Debtor's creditors, Defendant M.B.V. expanded its operations and became even more profitable.  Defendants Lyell and Hansen received salary, dividends, and other payments from M.B.V. in an amount to be proven at trial.  Upon information and belief, Defendant Johnson also received dividends and distributions, either directly, or indirectly through Defendant Prime, which was also a member or manager of Defendant M.B.V.

30)     With his share of the "dividends," Defendant Lyell bought a boat:



31)    None of these moneys were paid to Debtor's Creditors.

## IV.    The R2 Litigation

32)    After Debtor defaulted on its obligation, Creditor R2 filed a claim in the Superior Court for the State of California, County of San Diego, in the case entitled *R2 Mpowered, Inc. v. South Bay Investment Group, Inc.*

33)    R2 pursued the matter to trial, and ultimately won judgment, which is reflected in the claim it filed in this case for $ 887,051.31.  (Claim No. 4).

34)    Debtor was represented in that action by Creditor Wilson Kosmo Turner, whose final bill also remains unpaid.  (Claim No. 3).

35)    Once Creditor R2 began enforcing its judgment, Debtor filed the Bankruptcy.

36)    Accordingly, the Trustee now files this avoidance action to recoup the moneys taken by Defendants to the detriment of Debtor's creditors.

## FIRST CAUSE OF ACTION

### FOR AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS
### (11 U.S.C. §§ 548, 544 & Cal. Civ. Code §§ 3439.04, 3439.05)
### (AGAINST DEFENDANT LYELL AND HANSEN)

37)    The Trustee hereby incorporates by reference paragraphs 1-36 of this Complaint as if fully set forth herein.

38)    The Trustee is informed and believes, and thereon alleges, that the following transfers (collectively, the "Insider Transfers") were all made to, or for the benefit of, Defendants Lyell and Hansen in an amount to be proven at trial:

(a) Transfers made directly from Debtor to Defendants Lyell and Hansen under the guise of dividends, distributions, or other like transfers;

(b) Payments made by Debtor to creditors of Defendants Lyell and Hansen, for their direct benefit.

(c) Payments made to Defendants Lyell and Hansen indirectly through Defendant M.B.V., and labelled as dividends, distributions, or other like transfers;

39)    In so doing, Defendants Lyell and Hansen intended to hinder, delay, and defraud its creditor, R2.

40)    The Trustee is informed and believes, and thereon alleges, that the Insider Transfers were made:

(a) while the Debtor was insolvent and for less than a reasonably equivalent value;

(b) rendering the Debtor insolvent and for less than a reasonably equivalent value;

(c) while the Debtor was engaged in a business or transaction for which its remaining assets were unreasonably small in relation to the business or transaction and for less than a reasonably equivalent value; and/or

(d) while the Debtor intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due and for less than a reasonably equivalent value.

41)    By reason of the foregoing, the Insider Transfers are voidable pursuant to 11 U.S.C. sections 548 and 544(b), and sections 3439.04, subds. (a) - (b) and 3439.05 of the California Civil Code.

42)     Pursuant to 11 U.S.C. § 550(a), Defendants Lyell and Hansen are transferees of the voidable Insider Transfers, and the Trustee is entitled to recover the value of the Insider Transfers for the benefit of the estate.

## SECOND CAUSE OF ACTION

### FOR RECOVERY OF CORPORATE DISTRIBUTIONS

### (11 U.S.C. § 544 & Cal. Corp. Code § 500, *et seq.*)

### (AGAINST DEFENDANT LYELL AND HANSEN)

43)     The Trustee hereby incorporates by reference paragraphs 1-42 of this Complaint as if fully set forth herein.

44)     The Insider Transfers were distributions made by Debtor to Defendants Lyell and Hansen with the intent to defraud its creditors.

45)     The Insider Transfers are voidable and recoverable because they do not meet the requirements of Corporations Code section 500 for corporate distributions in that:

(a) The Insider Transfers were not paid out of retained earnings as that term is described under generally accepted accounting principles;

(b) The Insider Transfers reduced the Debtor's total assets to less than 1¼ times its total liabilities;

(c) The Insider Transfers reduced the Debtor's then-current assets below its then-current liabilities; and/or

(d) The Insider Transfers impaired the Debtor's ability to pay its debts as they matured;

46)    Accordingly, the Insider Transfers are dividends improperly made to Defendants Lyell and Hansen.

47)    Therefore, the Insider Transfers are recoverable by the Trustee for the benefit of the Estate.

### THIRD CAUSE OF ACTION

### FOR AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS
### (11 U.S.C. §§ 548, 544 & Cal. Civ. Code §§ 3439.04, 3439.05)
### (AGAINST DEFENDANT M.B.V.)

48)    The Trustee hereby incorporates by reference paragraphs 1-47 of this Complaint as if fully set forth herein.

49)    The Trustee is informed and believes, and thereon alleges, that the following transfers (collectively, the "M.B.V. Transfers") were all made to or for the benefit of Defendant M.B.V. and with the intent to defraud its creditors:

(a) Transfers made directly from Debtor to Defendant M.B.V. under the guise of the sale of assets, intangibles, and receivables;

(b) Payments made by Debtor to creditors of Defendant M.B.V., for its direct benefit.

50)    The Trustee is informed and believes, and thereon alleges, that the M.B.V. Transfers were made:

(a) while the Debtor was insolvent and for less than a reasonably equivalent value;

(b) rendering the Debtor insolvent and for less than a reasonably equivalent

value;

(c) while the Debtor was engaged in a business or transaction for which its

remaining assets were unreasonably small in relation to the business or

transaction and for less than a reasonably equivalent value; and/or

(d) while the Debtor intended to incur, or believed or reasonably should have

believed that it would incur, debts beyond its ability to pay as they became

due and for less than a reasonably equivalent value.

51)    By reason of the foregoing, the M.B.V. Transfers are voidable pursuant to 11

U.S.C. sections 548 and 544(b), and sections 3439.04, subds. (a) - (b) and 3439.05 of the

California Civil Code.

52)    Pursuant to 11 U.S.C. § 550(a), Defendant M.B.V. is a transferee of the

voidable M.B.V. Transfers, and the Trustee is entitled to recover the value of the M.B.V.

Transfers for the benefit of the estate.


## FOURTH CAUSE OF ACTION

## FOR AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS
## (11 U.S.C. §§ 548, 544 & Cal. Civ. Code §§ 3439.04, 3439.05)
## (AGAINST DEFENDANTS PRIME AND JOHNSON)

53)    The Trustee hereby incorporates by reference paragraphs 1-52 of this Complaint

as if fully set forth herein.

54)    The Trustee is informed and believes, and thereon alleges, that Payments made to Defendants Prime and Johnson, indirectly through Defendant M.B.V., and labelled as dividends, distributions, or other like transfers were all made to or for the benefit of Defendant Prime and Johnson, (the "P&J Transfers") and with the intent to defraud its creditors.

55)    The Trustee is informed and believes, and thereon alleges, that the P.J. Transfers were made:

(a) while the Debtor was insolvent and for less than a reasonably equivalent value;

(b) rendering the Debtor insolvent and for less than a reasonably equivalent value;

(c) while the Debtor was engaged in a business or transaction for which its remaining assets were unreasonably small in relation to the business or transaction and for less than a reasonably equivalent value; and/or

(d) while the Debtor intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due and for less than a reasonably equivalent value.

56)    By reason of the foregoing, the P&J Transfers are voidable pursuant to 11 U.S.C. sections 548 and 544(b), and sections 3439.04, subds. (a) - (b) and 3439.05 of the California Civil Code.

57)    Pursuant to 11 U.S.C. § 550(a), Defendants Prime and Johnson are transferees of the voidable P&J Transfers, and the Trustee is entitled to recover the value of the P&J Transfers for the benefit of the estate.

## FIFTH CAUSE OF ACTION

## CONVERSION AND CONSPIRACY TO CONVERT ASSETS

## (AGAINST ALL DEFENDANTS)

58)    The Trustee hereby incorporates by reference paragraphs 1-57 of this Complaint as if fully set forth herein.

59)    As alleged above, Defendants, and each of them, knowingly and willfully conspired and agreed between themselves to hinder, delay, and defraud the creditors in the collection of their claims against Debtor by transferring to Defendant M.B.V. all of Debtor's assets, including, but not limited to, contracts, equipment, files, furniture, computers, software, trade secrets, customer lists, vendor information, employees, good will, R2's leads, and the dba "Student Loan Relief Department" (collectively, the "S.B.I.G. Assets").

60)    The Defendants succeeded in converting the S.B.I.G. Assets, the value of which is not known at the time of filing, but the Trustee is informed and believes that at the time the assets were worth in excess of $ 1 million.

61)    60)    The Creditors have a right to repayment, and Defendants substantially interfered with R2's property by knowingly and willfully conspiring to defraud Creditor R2.Creditor R2 did not consent to Defendants fraudulent actions, and their conduct was a substantial factor in Defendant M.B.V defaulting on its obligations to Creditors.

## SIXTH CAUSE OF ACTION

## DECLARATORY JUDGMENT: SUCCESSOR LIABILITY

## (AGAINST ALL DEFENDANTS)

62)     The Trustee hereby incorporates by reference paragraphs 1-61 of this Complaint as if fully set forth herein.

63)     On a date within four years of the filing its underlying Bankruptcy Petition, Debtor transferred its assets (the "S.B.IG. Assets") to M.B.V.

64)     The transfer of the S.B.I.G. Assets to M.B.V. was a transaction that amounted to a consolidation or merger of Debtor and M.B.V.

65)     As a result of the transfer of the S.B.I.G. Assets to M.B.V., Defendant M.B.V. became a mere continuation of Debtor.

66)     The transfer of the S.B.I.G. Assets to M.B.V. was for the fraudulent purpose of escaping liability for Debtor's debts.

67)     As a result of the foregoing, Defendant M.B.V. is liable as a corporate successor of Debtor for Debtor's debts as of the date that the Court determines that Debtor transferred the S.B.I.G. Assets to Defendant M.B.V.

68)     As a result of the facts described in the foregoing paragraphs, an actual controversy of sufficient immediacy exists between the Parties as to whether Defendant M.B.V. is a successor entity of Debtor.

///

///

## SEVENTH CAUSE OF ACTION

## DECLARATORY JUDGMENT: ALTER EGO

## (AGAINST ALL DEFENDANTS)

69)     The Trustee hereby incorporates by reference paragraphs 1-68 of this Complaint as if fully set forth herein.

70)     On a date within four years of the filing of its Bankruptcy Petition, Debtor conspired with Defendants Lyell, Hansen, Johnson, and Prime to make a more profitable business venture by transferring the S.B.I.G. Assets into a separate corporate entity, Defendant M.B.V.

71)     In so doing, Defendants were able to pay to themselves dividends, bonuses, and other moneys (the "S.B.I.G. Moneys") that should have instead been utilized to pay Debtor's debts.  For example, Defendant Lyell utilized his portion of his share of the loot to purchase a boat called "HYNESIGHT", depicted above in his "Instagram post".

72)     As a result of these actions, the S.B.I.G.'s liabilities were concentrated in Debtor, and its assets were concentrated in Defendant M.B.V.

73)     These bad actions created a unity of interest between Defendants which worked to the detriment of Debtor's creditors.

74)     Accordingly, Defendants Lyell, Hansen, Johnson, and Prime are the alter egos of Debtor.

75)    As a result of the facts described in the foregoing paragraphs, an actual controversy of sufficient immediacy exists between the Parties as to whether Defendants Lyell, Hansen, Johnson, and Prime are the alter egos of Debtor.

## EIGHTH CAUSE OF ACTION

### RECOVERY OF AVOIDED TRANSFERS OR

### THEIR VALUE PURSUANT TO 11 U.S.C. § 550(A)

### (AGAINST ALL DEFENDANTS)

76)    The Trustee hereby incorporates by reference paragraphs 1-75 of this Complaint as if fully set forth herein.

77)    Each of the Preferential Transfers, the Constructive Fraudulent Transfers, the Actual Fraudulent Transfers, and the Unlawful Distributions (each, a "Transfer," and collectively, the "Transfers") is a transfer of the Debtor's interest in property that should be avoided as set forth above and, based thereon, Plaintiff is entitled to avoid all such Transfers, and each of them.

78)    Plaintiff is informed and believes, and based thereon alleges, that Defendants are entities for whose benefit the Transfers were made and/or is a transferee (initial, immediate, mediate and/or otherwise) of one or more of the Transfers, within the meaning of 11 U.S.C. § 550(a). Based thereon, Plaintiff is entitled to recover the Transfers, and each of them, or the value thereof, together with interest at the applicable rate from the date of each Transfer for the benefit of the Estate.

# NINTH CAUSE OF ACTION

## PRESERVATION OF TRANSFERS AVOIDED

## PURSUANT TO 11 U.S.C. § 551

## (AGAINST ALL DEFENDANTS)

79) The Trustee hereby incorporates by reference paragraphs 1-78 of this Complaint as if fully set forth herein.

80) Pursuant to 11 U.S.C. § 551, the Transfers, upon their avoidance, should be preserved for the benefit of the Estate.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# RESERVATION OF RIGHTS

81)    Plaintiff reserves the right to amend this Complaint to include, among other things, (i) further information or allegations regarding any of the Transfers, (ii) information, allegations ,or claims for relief regarding any additional transfers, (iii) modifications of and revisions to any Defendant's name, (iv) additional defendants, and (v) additional claims for relief, that may become known to Plaintiff at any time during this adversary proceeding through formal discovery of otherwise, and for the amendments to relate back to the date of filing this Complaint.

82)    Plaintiff reserves the right to bring all other claims for relief that Plaintiff may have against Defendants, on any and all grounds, as allowed under the law or in equity. Additionally, nothing contained in this Complaint shall be construed as a waiver of Plaintiff's right to object to any proof of claim filed by any Defendant on grounds separate and apart from those alleged herein. Accordingly, Plaintiff reserves the right to object, on any and all grounds, to any proof of claim filed by any Defendant.

# PRAYER

**WHEREFORE** Plaintiff prays judgment against Defendants, and each of them, as follows:

1)    On the **First Cause of Action**:

(a) That the Transfers to Defendants are avoided pursuant to 11 U.S.C. § 548(a)(1)(A);

2)  On the **Second Cause of Action**:

(a) That the Transfers to Defendants are avoided pursuant to 11 U.S.C. § 548(b)(1)(A);

3)  On the **Third and Fourth Causes of Action**:

(a) That the Transfers to Defendants are avoided pursuant to 11 U.S.C. § 544 and Cal. Civ. Code § 3439, *et seq.*;

4)  On the **Fifth Cause of Action**:

(a) That the Court enter a judgment in favor of the Trustee for the recovery of the S.B.I.G. Assets pursuant to 11 U.S.C. § 550;

5)  On the **Sixth Cause of Action**:

(a) That the Court enter a judgment declaring M.B.V. to be the successor entity of Debtor;

6)  On the **Seventh Cause of Action**:

(a) That the Court enter a judgment declaring Defendants Lyell, Hanson, M.B.V., Prime, and Johnson to be the alter egos of Debtor;

7)  On the **Eighth Cause of Action**:

(a) That the Court enter judgment for and/or order that Plaintiff be entitled to recover each of the Transfers, or the value thereof, from Defendants under 11 U.S.C. § 550;

8)  On the **Ninth Cause of Action**:

(a) That the Court enter judgment and/or order that the Transfers, and each of them, are preserved for the benefit of the Estate;

9)     On **All Causes of Action**:

(a) That Defendants, and each of them, be enjoined from transferring or encumbering the Property;

(b) For attorney fees associated with the prosecution of this suit;

(c) For interest on the sums identified above;

(d) For cost of suit incurred herein; and

(e) For such other relief as the Court may deem proper.

Respectfully submitted,
SHARIF | FAUST LAWYERS, LTD.

Dated:   June 25, 2021          By:   _____/s/ Matthew J. Faust_____
MATTHEW J. FAUST
Attorneys for Elissa D. Miller
Chapter 7 Trustee of the Bankruptcy Estate of
South Bay Investment Group, Inc.